FILED
2024 Sep-12 AM 10:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DELANA BENFORD,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | ______________________ |
| **THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |
| | ) | |

**<u>COMPLAINT</u>**

Plaintiff Delana Benford ("Plaintiff") brings this action for violations of the Employee Retirement Income Security Act of 1974 committed by Lincoln National Life Insurance Company ("Lincoln") in connection with the provision of ERISA-governed disability benefits under a group insurance plan sponsored by Plaintiff's former employer, Wells Fargo & Company. In support of the relief requested herein, Plaintiff alleges the following upon personal knowledge as to himself and as to all other matters upon information and belief based upon, *inter alia*, the investigation made by and through his attorneys:

## INTRODUCTORY STATEMENT

1. This is an action for legal and equitable relief seeking redress of violations of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA"). This suit is brought pursuant to 29 U.S.C. § 1132(a) to secure disability benefits due to Plaintiff through the group insurance policy sponsored by Wells Fargo & Company.

2. The Plaintiff seeks all benefits to which he may be entitled should this Court determine he is "disabled," including long-term disability benefits under policies issued or administered and underwritten by Lincoln.

3. Plaintiff seeks such benefits together with any other disability-related benefits his plan may provide based on the conditions documented in his records.

## JURISDICTION

4. Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. §1132(e) confers jurisdiction upon the district courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" and/or an "employee pension plan" as those terms are defined within 29 U.S.C. § 1001, et. seq. The Plan "may be found" within this district.

5. Jurisdiction is further appropriate under 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and diversity of citizenship exists between the parties.

6. Venue is appropriate in this District Court pursuant to 29 U.S.C. § 1132(e)(2), in that the employee welfare benefit plan at issue was at least partly administered in this District and Defendant may be found or resides in this District.

## PARTIES

7. Plaintiff Delana Benford is a participant in the Plan and thus entitled to benefits available thereunder.

8. Defendant Lincoln is a foreign corporation that does business by agent or otherwise in all counties in Alabama.

9. Lincoln is a "fiduciary" of The Plan as that term is defined by 29 U.S.C. § 1002(21) as it related to the time when Plaintiff's disability arose.

10. One of Lincoln's designated agent for service of process is:

**c/o The Prentice-Hall Corporation System, Inc**
**641 South Lawrence Street**
**Montgomery, AL 36104**

11. Lincoln is an entity exercising authority or control respecting the management or disposition of Plan assets or the personnel exercising said authority over Plan assets.

12. Lincoln is an entity providing services to the Plan at issue.

13. Lincoln is an entity meeting ERISA's definition of a "party in interest" in this case as that term is defined by 29 U.S.C. § 1002(14).

## THE PLAN

14. The Wells Fargo & Company LTD plan is an employee welfare benefit plan funded entirely by a long-term group insurance policy sold by Lincoln, the company which also underwrote this group policy.

15. This group policy was purchased by Wells Fargo & Company to confer certain benefits upon Plaintiff and other employees.

16. As a result, this policy qualifies as an employee welfare benefit plan as defined in 29 U.S.C. § 1002(1), and Plaintiff qualifies as a participant and/or beneficiary under the Plans as that term is used in 29 U.S.C. § 1132.

17. Under the terms of this LTD Plan providing for certain benefits accruing upon the Plaintiff becoming disabled, Plaintiff and other plan participants are entitled to receive disability insurance benefits upon proving their satisfaction of the following disability definition:

> **"Disability"** or **"Disabled"** means:
>
> i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and
>
> ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

18. The plan defines "Material and Substantial Duties" as follows:

> **"Material and Substantial Duties"** means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.

19. Because Plaintiff's claim was denied from the outset, the disability definition applied to him measures his disability against the "Own Occupation" standard indicated above. The policy defines "Own Occupation" to be as follows:

> **"Own Occupation"** means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Lincoln will consider the Covered Person's occupation as it is normally performed in the local economy.

20. There are no Plan documents made available indicating that Lincoln has an enforceable grant of discretionary authority as Plan or Claims Administrator or that any express delegation has occurred for this Plan.

21. Even of such a delegation was made, there is no enforceable grant of discretionary authority because the policy in this instance is governed by Minnesota law, which bans the enforcement of such clauses in disability policies like this one. *See* Minn. Stat. § 60A.42 (2023).

## LINCOLN'S LIABILITY

22. Before becoming disabled, Plaintiff worked for Wells Fargo as a "Customer Success Specialist," which Lincoln's vocational reviewers classified as a "sedentary" physical demand occupation.

23. Plaintiff became unable to continue working that occupation as a Customer Success Specialist due to diagnoses that included, among other things, chronic right hip pain, chronic right ankle pain, s/p traumatic right leg fracture repair with hardware, chronic low back pain, left knee osteoarthritis, and other issues that prevented him from being able to perform the material and substantial duties of his

job.

24. He eventually applied for LTD benefits under the terms of the plan's "Regular Occupation" disability definition, and in support of his claim, submitted a report from a Functional Capacity Evaluation he had obtained.

25. This FCE report showed Plaintiff to be incapable of functioning at even a sedentary capacity:

> **CONSISTENCY:** Patient made consistent efforts during FCE. No attempt to misrepresent abilities or self-hinder tasks was noted on FCE. Patient's walking speed over distance walking is slow and consistent at 1.13 mph. No apparent attempts to magnify or exaggerate their condition. As FCE progressed, he required greater rest breaks and more frequent task stoppages. He was permitted to elevate his leg after 15 minutes of a sustained standing task. Consistency was noted with cross testing, retesting and observed signs of competitive test performance.
>
> **RECOMMENDATIONS:** Patient is able to lift light loads from the floor. He can push, pull and carry light to lower medium loads, but requires facultative breaks when prolonged standing. Patient is unable to sit sustained x 2 hours without a change. He will need facultative breaks every <30 minutes. This will preclude him from working a full-time work situation. Work restrictions are summarized on the attached grid. See OT recommendations attached.

26. The evaluator explained as part of his recommendations that Plaintiff's inability to maintain a seated position for greater than 30 minutes at a time means he needs regular facultative breaks. And for however long he can sit, he can*not* maintain that position cumulatively for more than 4 hours during an 8 hour workday.

27. In a letter dated January 9, 2024, LTD Technical Claim Specialist Vera Gallman informed that her claims team had decided to terminate and close Plaintiff's LTD claim because it had found "we do not have the medical evidence" to support Plaintiff's inability to return to work as a customer service representative (rated as a sedentary occupation).

28. Ms. Gallman, however, did not favor Plaintiff with any discussion why the medical evidence he submitted, which was supportive of his claim, was deemed insufficient, so Plaintiff was left to guess as to how Ms. Gallman's claims team reached this determination. This was problematic because her statement directly conflicted with the functional capacity testing that was provided as referenced above which found Plaintiff to be unable to perform full-time work at even a sedentary level.

29. On May 30, 2024, after receiving this claim termination notice, Plaintiff timely lodged an appeal from Lincon's closure and termination of his benefit via facsimile and U.S. Priority mail.

30. In a letter dated June 4, 2024, Lincoln confirmed receipt of the faxed version of the appeal on the same day it was sent, May 30, 2024, and the additional receipt of the mailed version on June 3, 2024.

31. The materials included with Plaintiff's appeal included additional supportive medical information from Plaintiff's providers and a vocational review finding the functional limitations identified in Plaintiff's FCE result to be inconsistent with full time sedentary employment.

32. On July 24, 2024, Lincoln informed in a letter sent via facsimile that it had only very recently completed a preliminary review of Plaintiff's medical records and assessments submitted with his appeal, and that it was permitting Plaintiff an

opportunity to respond to these newly generated materials review since Lincoln viewed them as being adverse to Plaintiff's appeal.

33. Plaintiff responded to Lincoln's letter on August 19, 2024, and responded to the review, noting it was both incomplete and flawed, especially where the reviewer had no expertise or qualifications as to the administration of FCEs.

34. In a letter dated August 26, 2024, Lincoln informed that it elected to side with the opinion of its reviewer and not with the objective functional testing Plaintiff obtained through his FCE and affirmed the denial and closure of his LTD claim.

35. The documents identified thus far by Plaintiff as being part of his claim file establish numerous breaches and errors committed by Lincoln during the course of administering Plaintiff's claim, including:

(a) The targeting of Plaintiff's claims for denial because ERISA governs;

(b) The failure by Lincoln to take any meaningful measures to insulate its claims process from its inherent conflict under the Supreme Court case *Glenn v. MetLife* and instead allowing its profit motive to influence its claims administration for Plaintiff;

(c) The withholding of relevant documents and information from Plaintiff throughout the claims process and depriving Plaintiff of

the ability to obtain a full and fair review of her claim through an overall failure to communicate with Plaintiff about the claim;

(d) Taking an adversarial posture against Plaintiff instead of a fiduciary posture by searching for ways to avoid paying part or all of his claim;

(e) Failing to conduct an adequate investigation, and not considering and/or according proper weight to relevant, supportive information;

(f) Failing to accord any weight to Plaintiff's medical providers and other examiners who personally examined the Plaintiff, some on a regular basis;

(g) Failing to adhere to the terms of the Plan, such as those governing the review of adverse benefit determinations and when a decision must be made;

(h) Purposefully limiting and curtailing the review of its medical personnel and otherwise improperly exerting influence on them to opine against payment of benefits; and

(i) Unreasonably and arbitrarily overruling the professionals who personally examined Plaintiff and instead relying on the

demonstrably deficient report of a biased and unqualified doctor to perform an incomplete review of only records.

36. Despite Plaintiff's established disability and entitlement to coverage under the terms of the Plan, Lincoln determined that Plaintiff was not "disabled" and that he did not qualify for LTD benefits.

37. As set forth above in connection with Lincoln's fiduciary breaches, Lincoln's claim decision was the product of a conflict of interest whereby it allowed its own financial interests to supersede its fiduciary obligations. Under *Glenn*, this presents an additional reason for application of a *de novo* standard to their decision.

38. This conflict of interest further calls into question the credibility of Lincoln's claims personnel and reviewers.

39. Lincoln did not provide Plaintiff with a meaningful opportunity for a full and fair review of this claim for benefits as required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1, and instead actively tried to subvert Plaintiff's ability to protect his right to such a review.

40. Lincoln's decision process did not comport with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be understood by the participant, and must comport with Department of Labor regulations.

41. Plaintiff has exhausted all Plan remedies even though Lincoln's failure to adhere to Plan terms or ERISA requirements and regulations did not require it. As such, this case is ripe for judicial review.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Delana Benford respectfully requests this court find jurisdiction and venue appropriate, and after trial, grant the following relief:

a. For an order against Lincoln awarding Plaintiff all benefits due and owing in accordance with the terms of the Plan and Policy, as well as all prejudgment interest due thereon as permitted by law and equitable principles, pursuant to 29 U.S.C. § 1132(a);

b. For a judgment against Lincoln awarding Plaintiff all costs and reasonable attorney's fees incurred connected to the prosecution of and pursuit of relief in this action as permitted under 29 U.S.C. § 1132(g)(1);

c. For an order requiring Lincoln to provide Plaintiff with any additional benefits to which the Plaintiff would be entitled pursuant to a finding that the Plaintiff is disabled under The Plan(s); and

d. Such other relief as may be deemed just and proper.

Respectfully submitted,

M. Clayborn Williams (ASB-9101-A43M)
**The Martin Law Group, LLC**
**Attorneys for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402
Phone (205) 343-1771
Facsimile (205) 343-1781
clay@erisacase.com

**Plaintiff's Address:**

Delana Benford
c/o The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL 35402

**Defendant's Address:**

The Lincoln National Life Insurance Company
c/o The Prentice-Hall Corporation System, Inc
641 South Lawrence Street
Montgomery, AL 36104